FILED

DEC 1 6 2005

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
            DEPUTY CLERK

1

2

3

4

5

6

7

8

9

**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

10

11

12

13

14

15

16

17

18

| | |
|---|---|
| **GUSTAVO VARGAS,** | **CV F 04-5746 AWI** |
| Petitioner, | **(CR F 02-5050 AWI)** |
| v. | **ORDER DIRECTING PETITONER TO SHOW CAUSE WHY HIS MOTION TO CORRECT, VACATE OR SET ASIDE SENTENCE PURSUANT TO 28 U.S.C., SECTION 2255 SHOULD NOT BE DISMISSED, AND RELATED ORDERS** |
| **UNITED STATES OF AMERICA,** | |
| Respondent. | |
| | **(28 U.S.C. § 2255)** |

19

**INTRODUCTION**

20      Petitioner Gustavo Vargas ("Petitioner") seeks relief under 28 U.S.C. section[1] 2255 from

21  the sentence of 262 months that was imposed by this court on May 3, 2002, following

22  petitioner's entry of a plea of guilty to one count of conspiracy to distribute more than 500 grams

23  methamphetamine in violation of 21 U.S.C. 846, 841(a)(1), and aiding and abetting. Subsequent

24  to the motion pursuant to section 2255 that was filed on May 20, 2004, Petitioner has filed

25  requests for transcripts of proceedings, to file additional grounds for relief and for extension of

26  time. To the extent Petitioner's requests have not been addressed by prior order of the court, they

27

28

---

[1]      References to section numbers hereinafter refer to sections of Title 28 of the
United States Code unless otherwise specified.

1 will be addressed in this order.

2 **FACTUAL AND PROCEDURAL HISTORY**

3      In this multi-defendant drug manufacturing case, Petitioner was charged by superceding
4 indictment to one count of conspiracy to manufacture and distribute methamphetamine, aiding
5 and abetting in violation of 21 U.S.C. §§ 846 and 841(a)(1), 18 U.S.C. § 2, and one count of
6 manufacturing methamphetamine, aiding and abetting in violation of 28 U.S.C. §§ 841(a)(1), 18
7 U.S.C. § 2. Petitioner was convicted by a plea of guilty on January 7, 2003, to the conspiracy
8 count. Pursuant to the terms of the negotiated plea agreement, the manufacturing count was
9 dropped. Also pursuant to the plea agreement, Petitioner received a 3-level reduction in the
10 offense level and an agreement that the lower end of the guideline range would be recommended.
11 Petitioner was sentenced to a term of imprisonment of 262 months, which represents the low end
12 of the guideline range of 262 to 327 months. Judgment was entered on May 23, 2003. Petitioner
13 did not file a direct appeal.

14      In the plea agreement, Petitioner admits that a "solid mixture containing
15 methamphetamine" was seized from the crime scene. The Presentence Report states subsequent
16 laboratory analysis ascertained the net weight of the solid substance seized was 2,706.96 grams
17 and the weight of actual methamphetamine was 2,028 grams.[2] The amount of actual
18 methamphetamine recovered corresponds to a base offense level of 38. USSG 2D1.1(c). Three
19 points were deducted because Petitioner accepted responsibility. Thus, the total offense level
20 was 35. The Presentence Report calculated a criminal history score of 11, which established a
21 criminal history category of V. Based on the 2002 edition of the Guidelines Manual, the
22 guideline range for an offense level of 35 and a criminal history of V is 262 to 327 months.
23 Pursuant to the terms of the plea agreement, Petitioner was sentenced to the bottom end of that
24 range.

25

26      [2]      The Presentence Report erroneously states the kilogram amount is 2.2 kilograms,
rather than 2.02 kilograms. The error has no impact on the determination of the criminal offense
27 level and will therefore be disregarded.

28                                              2

1    Petitioner's motion for writ of habeas corpus pursuant to 28 U.S.C., section 2255 was
2  timely filed on May 20, 2004. Prior to the filing of Petitioner's motion pursuant to section 2255,
3  Petitioner filed a document requesting "assistance," which apparently requested Petitioner be
4  supplied transcripts of his change of plea hearing and his sentencing hearing. Petitioner's request
5  for "assistance" was denied by the court's order of February 5, 2005, which directed Petitioner to
6  request transcripts directly from the court reporter. Along with Petitioner's motion pursuant to
7  section 2255 (the "2255 motion"), which Petitioner filed on May 20, 2004, Petitioner also filed a
8  motion for waiver of fees in connection with production of transcripts of his change of plea and
9  sentencing hearings. Thereafter, Petitioner moved on September 13, 2005 to amend his 2255
10  motion by adding a ground under Blakely v. Washington, 542 U.S. 296 (2004). On March 16,
11  2005, Petitioner again requested transcripts of his change of plea and sentencing hearings and
12  moved again on August 19, 2005, to "supplement the grounds and authority" pursuant to Rule
13  15(d) of the Federal Rules of Civil Procedure.

14                                              **LEGAL STANDARD**

15    28 U.S.C. § 2255 provides, in pertinent part: "A prisoner in custody under sentence of a
16  court established by Act of Congress claiming the right to be released upon the ground that the
17  sentence was imposed in violation of the Constitution or laws of the United States ... may move
18  the court which imposed the sentence to vacate, set aside or correct the sentence." Under section
19  2255, "a district court must grant a hearing to determine the validity of a petition brought under
20  that section, '[u]nless the motions and the files and records of the case conclusively show that the
21  prisoner is entitled to no relief.' " United States v. Blaylock, 20 F.3d 1458, 1465 (9th Cir.1994)
22  (quoting 28 U.S.C. § 2255) (emphasis in the original). The court may deny a hearing if the
23  movant's allegations, viewed against the record, fail to state a claim for relief or "are so palpably
24  incredible or patently frivolous as to warrant summary dismissal." United States v. McMullen,
25  98 F.3d 1155, 1159 (9th Cir.1996) (internal quotations omitted), cert. denied, 520 U.S. 1269, 117
26  (1997). To earn the right to a hearing, therefore, the movant must make specific factual

27

28                                                    3

1  allegations which, if true, would entitle him to relief. Id. Mere conclusory statements in a
2  section 2255 motion are insufficient to require a hearing. United States v. Hearst, 638 F.2d 1190,
3  1194 (9th Cir.1980), cert. denied, 451 U.S. 938 (1981).

## DISCUSSION

5  Petitioner's listed grounds for habeas corpus relief are somewhat repetitive but they can
6  be summarized as follows: (1) Petitioner claims his plea was not knowingly or voluntarily made,
7  (2) the court enhanced Petitioner's sentence upon the determination of amounts of drug seized at
8  the crime scene that were neither admitted or proved beyond a reasonable doubt in violation of
9  Blakely, (3) there was ineffective assistance of counsel, and (4) there was failure to provide
10  access to consular services in violation of the Vienna Convention. To the extent discussion of
11  these grounds involves facts, assertions or arguments presented by Petitioner in documents that
12  were filed after the initial 2255 motion was filed on May 20, 2004, the court will construe those
13  facts, assertions or arguments as amendments to the 2255 motion and hereby grants leave for
14  those amendments.

15  **I. Voluntariness of Plea, Ineffective Assistance of Counsel and Waiver**

16  In the plea agreement, Petitioner "waives his right to challenge his conviction, sentence or
17  the manner in which it was determined in any post-conviction attack, including but not limited to
18  a motion brought under Title 28, United States Code, Sections 2241 or 2255." Plea agreement at
19  3:14. Petitioner also acknowledges in the plea agreement that the waiver of rights to appeal and
20  to collaterally attack the sentence or the conviction is in exchange for concessions made by the
21  United States.

22  Generally, a waiver of the right to appeal or to collaterally attack a conviction or sentence
23  is enforceable if "(1) the language of the waiver encompasses [the] right to appeal on the grounds
24  raised, and (2) the waiver is knowingly and voluntarily made." United States v. Jeronimo, 398
25  F.3d 1149, 1153 (9th Cir. 2005). However, the right to challenge the validity of the plea itself on
26  the grounds the plea was not voluntarily made because of ineffective assistance of counsel is not

27

28  4

waived. Washington v. Lampert, 422 F.3d 864, 871 (9th Cir. 2005). The waiver of rights contained in Petitioner's plea agreement to appeal or to collaterally attack the sentence, judgment or means of determination of the sentence is comprehensive. In the plea agreement, Petitioner agreed to waive rights to appeal or to collaterally attack "on the grounds set forth in Title 18, United States Code, Section 3742 or on any ground whatever." Because the plea agreement is comprehensive in its waiver of rights of appeal or collateral attack, the court lacks jurisdiction to address the merits of Petitioner's 2255 motion except to the extent the motion seeks to invalidate the plea agreement itself on the grounds of involuntariness and/or ineffective assistance of counsel.

A plea agreement must be honored if it is voluntarily made and taken in compliance with Rule 11 of the Federal Rules of Criminal Procedure.[3] United States v. Portillo-Cano, 192 F.3d 1246, 1250 (9th Cir. 1999). The court has examined the extensive colloquy between Petitioner and the court during Petitioner's change of plea hearing. The court finds the court thoroughly addressed each of the considerations listed at Rule 11, subdivisions (b)(1) and (b)(2). In particular, the court notes the plea colloquy addressed Petitioner's knowledge of the maximum and mandatory minimum penalties, the court's obligation to sentence according to the sentencing guidelines and the fact Petitioner had waived rights to appeal and collaterally attack his conviction, sentence or the means by which his sentence would be determined. See Rule 11, subdivisions (b)(1)(H-N). The court also questioned Petitioner to determine the plea was voluntary in accordance with Rule 11, subdivision (b)(2). There is nothing at all in the plea colloquy the court can find that indicates Petitioner's plea was in any way unknowing, involuntary or in violation of Rule 11.

Petitioner contends his plea was nonetheless involuntary because his attorney failed to adequately explain the implications of the agreement or otherwise misled Petitioner into signing

---

[3] References to "Rule" or "Rules" hereinafter refer to the Federal Rules of Criminal Procedure unless otherwise specified.

5

1  a plea agreement that Petitioner would not have otherwise signed. The test for ineffective
2  assistance of counsel in the context of a challenge to the validity of a guilty plea is the same test
3  that is applied generally in criminal cases. Jeronimo, 398 F.3d at 1155. That is, Petitioner must
4  demonstrate (1) a deficient performance by counsel, and (2) prejudice to him. United States v.
5  Cochrane, 985 F.2d 1027, 1030 (9th Cir.1993). To prove a deficient performance of counsel,
6  Petitioner must demonstrate that his attorney "made errors that a reasonably competent attorney
7  acting as a diligent and conscientious advocate would not have made." Butcher v. Marquez, 758
8  F.2d 373, 376 (9th Cir.1985). To show prejudice, Petitioner must demonstrate that "there is a
9  reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding
10 would have been different." Strickland v. Washington, 466 U.S. 668, 694 (1984)..

11        There is no indication in the record before the court that the assistance provided by
12 Petitioner's attorney was in any way deficient. Petitioner fails to allege any specific
13 misrepresentation or error attributable to his counselor. Even assuming, *arguendo*, Petitioner's
14 attorney failed to inform Petitioner of the sentencing enhancements that could come into play
15 where large quantities of drugs are involved, the record makes it clear Petitioner was informed to
16 the extent the law demands because he was informed by the court that his sentence could be set
17 higher or lower within the statutory range depending on facts set forth in the sentencing report.
18 Generalized assertions of incompetence, including failure to make objections or less-often-than-
19 desired communications between attorney and a defendant are not sufficient to establish
20 performance below the broad range of acceptable. See Jeronimo, 398 F.3d at 1156 (generalized
21 assertions of incompetence not sufficient).

22        Neither does the record contain any indication of prejudice. Indeed, what is apparent
23 from the record is that Petitioner's attorney secured a plea agreement that conferred significant
24 benefit on Petitioner. Regardless of Petitioner's subjective notions of what he did or did not
25 admit, the fact remains the amount of drug that was seized at the scene would have been a
26 significant factor in determining the level of criminal conduct in any event, and the amount was
27

28                                               6

clearly established by laboratory analysis.  If Petitioner had, as he alleges, refused to accept the plea agreement after being fully informed that his sentence would be enhanced according to the amount of methamphetamine recovered, he would have faced a high probability of proof of the same facts beyond a reasonable doubt and sentencing on both counts without the benefit of a three level reduction for taking responsibility.  Given that Petitioner's involvement was clearly established by his capture at the scene of the crime and by testimony of the confidential informant and by laboratory analysis of the seized drugs, there is no plausible basis upon which Petitioner can claim prejudice by having been persuaded to sign a plea agreement containing substantial bargained-for benefits.

The court finds Petitioner entered the plea of guilty knowingly and voluntarily and that there is no indication in the record he suffered ineffective assistance of counsel.  The court therefore concludes that the comprehensive waiver of rights to appeal or to collaterally attack the sentence or the manner in which the sentence was determined is enforceable.  Because the court must give effect to Petitioner's waivers of rights, the court is without jurisdiction to decide the merits of the remaining claims raised by Petitioner's motion pursuant to section 2255.

## II. Blakely Violation

The court briefly addresses Petitioner's claims under Blakely v. Washington only for the purpose of demonstrating that Petitioner would not be entitled to relief under Blakely even in the absence of waiver.  In presenting this discussion, the court makes no determination as to whether Petitioner's waiver, which the court has determined is enforceable, encompasses Petitioner's rights under Blakely.

In United States v. Booker, 543 U.S., 125 S.Ct. 738, 756 (2005), the Supreme Court applied the rule first announced in Apprendi v. New Jersey, 530 U.S. 446, 490 (2000), and later applied to state sentencing guidelines in Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531 (2004), to the federal sentencing guidelines.  Under Booker and Blakely, "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by

1  the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or

2  proved to a jury beyond a reasonable doubt." Booker, 125 S.Ct. at 756.

3         The issue presented here is whether the rule in Booker applies. The Ninth Circuit has

4  determined that the rule in Booker and Blakely is not a watershed rule that may be applied

5  retroactively on collateral review, but rather is a rule of procedure that is not applicable to cases

6  where the judgment was final before the rule was announced. Schardt v. Payne, 414 F.3d 1025,

7  1036-1038 (9th Cir. 2005). The decision in Blakely, was decided on June 24, 2004. Judgment in

8  this case was entered on May 23, 2003. A judgement becomes final the day following the last

9  day on which notice of appeal could have been filed. Where no appeal is taken, the judgment is

10  final on the eleventh day following entry of judgment in the case. See Rodriguez v. United

11  States, 111 F.Supp.2d 112, 113 (D. Conn. 1999). Judgement was therefore final in Petitioner's

12  case on June 3, 2003. Thus, judgment in this case became final a little more than one year before

13  the decision in Blakely was announced. Petitioner may not, therefore, rely upon the rule set forth

14  in Blakely in collaterally attacking his sentence. Even if there were no waiver, Petitioner would

15  not prevail on his claim the sentence was unlawfully enhanced by reliance on facts not admitted

16  to or proven beyond a reasonable doubt.

17  **III. Vienna Convention**

18         Because the court finds Petitioner's plea was made knowingly and voluntarily, the court

19  also finds the waiver set forth therein is enforceable and that it encompasses Petitioner's claim of

20  violation of the Vienna Convention due to failure to secure consular services. The issue is

21  therefore waived.

22  **IV. Other Motions for Relief**

23         As previously discussed, Petitioner's motions to add grounds or expand the record are

24  granted to the extent they represent amendments to Petitioner's 2255 motion and to the extent the

25  amendments consist of materials already submitted to the court.

26         Petitioner has also requested transcripts of his change of plea hearing and his sentencing

27

28                                              8

1  hearing.  Pursuant to 28 U.S.C., section 753, a court may direct production of transcripts of
2  proceedings at government expense for the benefit of the a party moving pursuant to section
3  2255 "if the trial judge or a circuit judge certifies that the suit or appeal is not frivolous and that
4  the transcript is needed to decide the issue presented by the suit or appeal." 28 U.S.C. §753(f).
5  A district court does not abuse its discretion in denying a request for production of transcripts
6  where there are only generallized allegations of error and the moving party has failed to point to
7  specific errors that would be reflected in the transcript.  See McKinney v. Anderson, 924 F.2d
8  1500, 1512 (9th Cir. 1990), *overruled on other grounds in* Helling v. McKinney, 509 U.S. 1218
9  (1992).

10  The court has determined that, in view of the comprehensive nature of Petitioner's waiver
11  of rights in the plea agreement, the only issues Petitioner may raise are issues pertaining to the
12  validity of the plea of guilty itself.  The court finds transcript of Petitioner's change of plea
13  hearing may be helpful in that it contains information relevant to the court's assessment of the
14  knowing and voluntary nature of the plea.  Petitioner's motion for provision of transcript of his
15  sentencing hearing and the transcript is therefore granted and the transcript of that hearing is
16  attached to this order.  The court has also considered Petitioner's request for transcripts of his
17  sentencing hearing and finds such transcripts have a very low probability of containing any
18  information that would be relevant to the issue of the validity of Petitioner's plea.  Moreover,
19  Petitioner has failed to allege any specific errors that may have occurred during the sentencing
20  hearing that would be pertinent to the issue of the validity of the plea agreement.  Petitioner's
21  request for the transcripts of his sentencing hearing are therefore denied.

22                                        **CONCLUSION AND ORDER**

23  Before dismissing Petitioner's motion, the court will give Petitioner an opportunity to be
24  heard on the issue of whether his plea of guilty should be vacated on the grounds of
25  involuntariness or ineffective assistance of counsel.  As previously discussed, the court hereby
26  GRANTS Petitioner's request for transcripts of his change of plea hearing and those transcripts
27

28                                                    9

1 | are attached hereto. Petitioner's motion for transcripts of his sentencing hearing are hereby
2 | DENIED.

3 |      For the reasons set forth above, PETITIONER IS HEREBY ORDERED TO SHOW
4 | CAUSE why his motion for relief under 28 U.S.C. section 2255 should not be dismissed on the
5 | ground the court lacks jurisdiction to decide the merits of Petitioner's motion because Petitioner
6 | knowingly and voluntarily waived the right to collaterally attack the judgment, his sentence or
7 | the manner in which the sentence was determined. Petitioner may submit a response to this order
8 | to show cause within thirty (30) days of the date of this order. If Petitioner does not respond to
9 | this order to show cause the court will deem his request for relief abandoned, and will order his
10 | motion dismissed and direct the Clerk of the Court to close this case. Petitioner's response, if
11 | any, to this order to show cause shall be entitled "Response to Order to Show Cause," and shall
12 | be filed and served in compliance with the Local Rules and the Federal Rules of Civil Procedure.
13 | Petitioner shall serve a copy of his response to this order to show cause, if any, upon the attorney
14 | for the government. The Government shall not respond unless directed to do so by this court.

15 |

16 | IT IS SO ORDERED.

17 |
18 |
19 | DATED: December, /5, 2005

20 |     ANTHONY W. ISHII
21 |     UNITED STATES DISTRICT JUDGE
22 |
23 |
24 |
25 |
26 |
27 |
28 |     10

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

HON. ANTHONY W. ISHII, JUDGE

UNITED STATES OF AMERICA, )
)
         Plaintiff, ) No. CR-F-02-5050-AWI
)
vs. )
) CHANGE OF PLEA
GUSTAVO VARGAS, )
)
         Defendant. )
_____)

fresno, California               Tuesday, January 7, 2003

REPORTER'S TRANSCRIPT OF PROCEEDINGS



KAREN LOPEZ, RMR-CRR
Official Court Reporter
CSR No. 5816

APPEARANCES OF COUNSEL:

For the Plaintiff:              United States Attorney's Office
                                BY: **LAUREL J. MONTOYA**
                                3654 Federal Building
                                1130 O Street
                                Fresno, California 93721

For the Defendant:              Fletcher & Fogderude
                                BY:  **ERIC K. FOGDERUDE**
                                5412 North Palm Avenue
                                Suite 101
                                Fresno, CA 93704

| | |
|---|---|
| 1 | Tuesday, January 7, 2003            Fresno, California |
| 2 | 1:02 p.m. |
| 3 | THE COURT:  Okay.  Back on the record.  If I can just |
| 4 | get an update. |
| 5 | MR. FOGDERUDE:  Yes, Your Honor, with respect to Mr. |
| 6 | Vargas, he is entering into a plea agreement.  We signed the |
| 7 | agreement and the U.S. attorney has it. |
| 8 | THE COURT:  Okay. |
| 9 | MR. FOGDERUDE:  You want us at the podium? |
| 10 | THE COURT:  Yes, please. |
| 11 | All right.  Mr. Vargas, I'll need to ask you a number |
| 12 | of questions under oath.  If you please raise your right hand |
| 13 | and the clerk will administer an oath to you. |
| 14 | (Defendant sworn.) |
| 15 | THE COURT:  You are now under oath.  If you answer |
| 16 | any of my questions falsely, your answers may later be used |
| 17 | against you in another prosecution for perjury or making a |
| 18 | false statement.  You understand that? |
| 19 | THE DEFENDANT:  Yes. |
| 20 | THE COURT:  What is your full name? |
| 21 | THE DEFENDANT:  Gustavo Vargas. |
| 22 | THE COURT:  How old are you? |
| 23 | THE DEFENDANT:  37. |
| 24 | THE COURT:  How far did you go in school? |
| 25 | THE DEFENDANT:  Seventh. |

1           THE COURT:  Have you been treated recently for any

2 mental illness or addiction to narcotic drugs of any kind?

3           THE DEFENDANT:  No.

4           THE COURT:  Are you currently, that is now, under the

5 influence of any drug, medication or alcoholic beverage of any

6 kind?

7           THE DEFENDANT:  No.

8           THE COURT:  Have you had a copy of the superseding

9 indictment, that is the written charges pending against you

10 translated for you so you understand what you're being charged

11 with in this case?

12           THE DEFENDANT:  Yes.

13           THE COURT:  Have you fully discussed those charges

14 and your case in general with your attorney?

15           THE DEFENDANT:  Yes.

16           THE COURT:  Are you fully satisfied with the counsel,

17 representation and advice given to you in this case by your

18 attorney?

19           THE DEFENDANT:  Yes.

20           THE COURT:  You understand in this case that your

21 attorney has had discussions with the attorney for the

22 government on your behalf?

23           THE DEFENDANT:  What was that?

24           THE COURT:  You understand that your attorney has

25 spoken with the attorney for the government and he did this on

1 | your behalf?

2 | THE DEFENDANT: Yes.

3 | THE COURT: Is your willingness to plead guilty the

4 | result of discussions that your attorney has had with the

5 | attorney for the government?

6 | THE DEFENDANT: Yes.

7 | THE COURT: I have received a document entitled

8 | memorandum of plea agreement. Have you had this plea

9 | agreement translated to you so that you understand everything

10 | in the plea agreement?

11 | THE DEFENDANT: Yes.

12 | THE COURT: Have you fully discussed the plea

13 | agreement and its consequences with your attorney?

14 | THE DEFENDANT: Yes.

15 | THE COURT: And in understanding what is in the plea

16 | agreement, did you personally sign the plea agreement at the

17 | last page?

18 | THE DEFENDANT: Yes.

19 | THE COURT: And the plea agreement was translated to

20 | you?

21 | THE DEFENDANT: Yes.

22 | THE COURT: Okay. Great. The only thing I'll ask is

23 | that the interpreter sign on the signature page once the plea

24 | is completed.

25 | All right. And again, in terms of understanding the

1   plea agreement, you personally signed the plea agreement here

2   at the last page; is that correct?

3             THE DEFENDANT:  Yes.

4             THE COURT:  Does this plea agreement represent

5   everything, as far as your understanding, of the agreement

6   that you have reached with the government regarding your case?

7             THE DEFENDANT:  Yes.

8             THE COURT:  Do you understand all of the terms of the

9   plea agreement?  That is, what you have agreed to and what the

10  government has agreed to?

11            THE DEFENDANT:  Yes.

12            THE COURT:  Has anyone made any other or different

13  promise or assurance of any kind to you in an effort to induce

14  you to plead guilty in this case?

15            THE DEFENDANT:  No.

16            THE COURT:  Has anyone attempted in any way to force

17  you to plead guilty?

18            THE DEFENDANT:  Only life.

19            THE COURT:  But any individual?

20            THE DEFENDANT:  No.

21            THE COURT:  Are you pleading guilty of your own free

22  will because in this case you are guilty of the charge that

23  you're pleading guilty to here today?

24            THE DEFENDANT:  Yes.

25            THE COURT:  In the plea agreement, it sets forth the

1   maximum potential sentence that you could receive.

2   And with respect to Count One of the indictment,

3   which charges you with conspiring to manufacture and

4   distribute 500 grams of a mixture containing methamphetamine

5   and aiding and abetting, the maximum potential sentence is as

6   follows:  Imprisonment of a mandatory minimum of ten years,

7   unless you meet the requirements of what we commonly refer to

8   as a safety valve provision.  A maximum term of life

9   imprisonment.  A fine maximum up to 4 million dollars or both

10  the fine and the imprisonment.

11  You would be subject to a term of supervised release

12  with a mandatory minimum five years up to life.  Should you

13  violate any terms of your supervised release, you can be

14  returned to custody for the term of supervised release

15  actually imposed.  There is a mandatory penalty assessment of

16  $100.

17  You may become temporarily or permanently ineligible

18  for any and all federal benefits and that you shall be

19  ineligible for certain government benefits funded under the

20  Social Security act and under the food stamp act.  If any

21  property was seized from you or that you have claim to that

22  was seized during the course of this investigation in this

23  case, it might be forfeited, that is taken from you

24  permanently by the government.  And that would include any

25  cash.

8

1          Have you had the opportunity to fully discuss with

2  your attorney all the possible consequences of your plea of

3  guilty?

4          THE DEFENDANT:  Yes.

5          THE COURT:  And do you understand all those possible

6  consequences?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Your sentencing will be conducted

9  pursuant to the United States Sentencing Commission sentencing

10  guidelines.  Have you discussed with your attorney how these

11  sentencing guidelines might apply to your case?

12          THE DEFENDANT:  Yes.

13          THE COURT:  The Court will not be able to determine

14  the guideline sentence for your case until after a presentence

15  report has been completed and you and the government have had

16  an opportunity to challenge the reported facts and the

17  application of the guidelines recommended by the probation

18  officer.  The sentence imposed may be different from any

19  estimate your attorney may have given you.  Do you understand

20  that?

21          THE DEFENDANT:  Yes.

22          THE COURT:  After a guideline range has been

23  determined, the Court has the authority in some circumstances

24  to depart from the guideline and impose a sentence that is

25  more severe or less severe than the sentence called for by the

1  guideline.  Do you understand that?

2          THE DEFENDANT:  Yes.

3          THE COURT:  As part of your plea agreement, you're

4  agreeing to waive, that is give up, your legal right to appeal

5  your case and also agreeing to waive your right to attack your

6  plea, conviction or sentence in any post conviction

7  proceeding.  Do you understand that?

8          THE DEFENDANT:  Yes.

9          THE COURT:  And do you now waive, that is give up

10  those legal rights for this case?

11          THE DEFENDANT:  Yes.

12          THE COURT:  In addition, if you enter a plea of

13  guilty today, you would also be giving up certain other legal

14  rights that we commonly refer to as your trial rights for this

15  case only.  In this case, you have the right to plead not

16  guilty to any offense charged against you and to persist in

17  that plea.  You then have the right to a speedy public trial

18  by jury.  Do you understand that legal right?

19          THE DEFENDANT:  Yes.

20          THE COURT:  And do you give up that legal right for

21  this case?

22          THE DEFENDANT:  Yes.

23          THE COURT:  At trial, you would be presumed to be

24  innocent and the government would have to prove your guilt

25  beyond a reasonable doubt.  You would have the right to see

1  and hear all the witnesses and have them cross-examined in

2  your defense. Do you understand that legal right?

3             THE DEFENDANT: Yes.

4             THE COURT: And you give up that legal right?

5             THE DEFENDANT: Yes.

6             THE COURT: You would have the right to present your

7  own defense, including the right to use the Court's subpoena

8  power to order in witnesses to testify in your defense at no

9  cost to you. Do you understand that legal right?

10            THE DEFENDANT: Yes.

11            THE COURT: And do you give up that legal right?

12            THE DEFENDANT: Yes.

13            THE COURT: You have the right on your own part to

14  decline to testify unless you voluntarily elected to do so in

15  your own defense. Do you understand that legal right?

16            THE DEFENDANT: Yes.

17            THE COURT: And do you give up that legal right?

18            THE DEFENDANT: Yes.

19            THE COURT: Should you decide not to testify or put

20  on any evidence, these facts cannot be used against you. Do

21  you understand that?

22            THE DEFENDANT: Yes.

23            THE COURT: At trial you would have the right to the

24  assistance of counsel for your defense and free court

25  appointed counsel if you could not afford to hire your own.

1  Do you understand that legal right?

2          THE DEFENDANT:  Yes.

3          THE COURT:  And do you give up that legal right?

4          THE DEFENDANT:  Yes.

5          THE COURT:  In order for you to be found guilty of

6  the charge in Count One, conspiracy to manufacture and

7  distribute more than 500 grams of a mixture containing

8  methamphetamine, the government must prove the following legal

9  elements beyond a reasonable doubt:

10         First, that there was an agreement between two or

11  more persons to manufacture and distribute methamphetamine.

12  And second, that you became a member of this conspiracy,

13  knowing of at least one of its criminal objectives and

14  intending to help accomplish it.

15         Further, before a mandatory minimum sentence of ten

16  years can be imposed upon you in connection with this charge,

17  the government must prove each of the following facts beyond a

18  reasonable doubt:  That the conspiracy involved the actual

19  manufacture and/or possession with intent to distribute 50

20  grams or more of actual methamphetamine or 500 grams or more

21  of a mixture or substance containing a detectable amount of

22  methamphetamine and that you yourself knew or could reasonably

23  foresee that the conspiracy involved the actual manufacture,

24  distribution and/or possession with intent to distribute 50

25  grams or more of actual methamphetamine or 500 grams or more

1  of a mixture or substance containing a detectable amount of

2  methamphetamine.

3    Do you understand each of those legal elements?

4    THE DEFENDANT:  Yes.

5    THE COURT:  All right.  At this time I'm going to ask

6  counsel to state the facts that apply in your case.  After

7  counsel is done, I will ask you if agree with those facts.  If

8  you do, those facts are sufficient to prove each of those

9  legal elements and the amount involved of the drug quantity

10  beyond a reasonable doubt.

11    MS. MONTOYA:  On or about January 24th, 2002, in the

12  state and Eastern District of California, the defendant did

13  knowingly and intentionally conspire to manufacture and

14  distribute more than 500 grams of substance containing

15  methamphetamine.

16    Eduardo Pano Cano was followed to a residence located

17  at 24844 Avenue 18 1/2 in Madera County with the heating

18  mantle where detectives of the Fresno Methamphetamine Task

19  Force found an operational clandestine methamphetamine

20  laboratory in the attached garage of the residence.

21    Defendant Gustavo Vargas, Eduardo Pano Cano, Jose

22  Lopez, Alejandro Pano Cano, Miguel Esparza Torres and a

23  juvenile were observed going between the residence and the

24  garage where the laboratory was found.  Defendant Gustavo

25  Vargas, Eduardo Pano Cano, Alejandro Pano Cano, Miguel Esparza

1   Torres and a juvenile fled the residence when law enforcement

2   served the search warrant. All were apprehended a short

3   distance away from the location.

4           The garage contained numerous items used in the

5   manufacturing of methamphetamine, including an HCL gas

6   cylinder, a mop bucket that was being used to wring out a

7   sheet containing finished product, a 22 liter flask, a propane

8   stove with tank, two heating mantles and rheostats, red

9   phosphorous, pseudoephedrine, sodium hydroxide and empty

10  Coleman fuel cans.

11          Buckets with 27 gallons of a substance -- excuse me,

12  of a solution containing methamphetamine as well as 2,706.96

13  grams of a solid mixture containing methamphetamine was seized

14  from the garage.

15          THE COURT: All right. Mr. Vargas, is that a true

16  and accurate statement of the facts that apply in your case?

17          THE DEFENDANT: Yes.

18          THE COURT: In Count One of the indictment,

19  superseding indictment, you're charged with a violation of 21

20  United States Code, Sections 846, 841(a)(1) and (b)(1)(A) and

21  18 United States Code, Section 2, commonly referred to as

22  conspiracy to manufacture and distribute methamphetamine and

23  aiding and abetting occurring between the time frames of on or

24  about January 23, January 24, 2002 in the State and Eastern

25  District of California. And that the amount involved was more

1  than 500 grams of a mixture containing methamphetamine, which

2  is a Schedule II controlled substance.

3  To that charge, how do you now wish to plead, guilty

4  or not guilty?

5  THE DEFENDANT: Guilty.

6  THE COURT: All right. It is the finding of the

7  court in this case that the defendant, Gustavo Vargas, is

8  fully competent and capable of entering an informed plea. He

9  is aware of the nature of the charges and the consequence of a

10  plea. The plea of guilty is a knowing and voluntary plea

11  supported by an independent basis in fact containing each of

12  the essential elements of the offense. The plea is therefore

13  accepted and the defendant is now judged guilty of that

14  offense.

15  Okay. Mr. Vargas, I'm going to refer your matter to

16  the probation office, who will prepare a written presentence

17  report. You will be asked to give information for this

18  report. You are entitled to have your attorney present at any

19  contact that you have with the probation office. You and your

20  attorney will be permitted to read the presentence report and

21  file any objections to the report before the sentencing

22  hearing.

23  At your sentencing hearing, both you and your

24  attorney will have the opportunity to speak on your behalf.

25  Okay. And we'll set the date for the consideration

1   of presentence investigation report and sentencing for Monday,

2   March 17, 2003 at nine o'clock in the morning.  And the trial

3   as to Mr. Vargas is vacated.

4           MR. FOGDERUDE:  Thank you, Your Honor.

5           THE COURT:  Anything else on behalf of defense?

6           MR. FOGDERUDE:  No, Your Honor.

7           THE COURT:  Anything else on behalf of the government

8   as to Mr. Vargas?

9           MS. MONTOYA:  No, Your Honor.

10          (The proceedings were concluded at 1:20 p.m.)

11

12          I, KAREN L. LOPEZ, Official Reporter, do hereby

13  certify that the foregoing transcript as true and correct.

14

15  DATED:_____12-8-05_____        _____
                                       KAREN L. LOPEZ

16

17

18

19

20

21

22

23

24

25